**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROMAN ILDEFONSO-CANDELARIO,** | : | |
| | : | |
| **Petitioner** | : | **CIVIL ACTION NO. 3:16-2120** |
| | : | |
| **v.** | : | **(MANNION, D.J.)** |
| | : | **(SAPORITO, M.J.)** |
| **CRAIG A. LOWE, Warden,** *et al.***,** | : | |
| | : | |
| **Respondents** | | |

**MEMORANDUM**

Before the court is petitioner Roman Ildefonso-Candelario's motion for attorney's fees, expenses and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. §2412, and the Administrative Procedure Act ("APA"), 5 U.S.C. §504. (Doc. 22). Petitioner contends that he is entitled to an award under the EAJA because he was the prevailing party with respect to his petition for a writ of habeas corpus, brought pursuant to 28 U.S.C. §2241, (Doc. 1), and because the government's position was not substantially justified. For the reasons set forth below, the court will **GRANT** petitioner's motion, (Doc. 22), and award him attorney's fees in the amount of $8,137.50.

## I.    RELEVANT BACKGROUND[1]

Petitioner, an alien, who entered the United States without inspection in 1996, was taken into custody by Immigration Customs and Enforcement ("ICE") on March 29, 2016, and detained under 8 U.S.C. §1226(c). ICE charged petitioner as removable, pursuant 8 U.S.C. §1182(a)(6)(A)(i), (a)(2)(A), alleging that he was present in the United States without being admitted or paroled, and that his 2015 conviction in Cumberland County Court, under 18 Pa.C.S.A. §5101for obstructing administration of law or other governmental function, was a crime involving moral turpitude. Removal proceedings were then initiated against him. After being mandatorily detained by ICE for almost seven months during the removal proceedings, petitioner filed his habeas petition on October 20, 2016 claiming that his detention was unreasonably prolonged, in violation of 8 U.S.C. §1226(c), and in violation of his procedural and substantive due process rights. He requested that he be provided with a bond hearing conducted by this court or by an Immigration Judge ("IJ").

On April 21, 2017,  Magistrate Judge Joseph F. Saporito, Jr, issued a report and recommendation, (Doc. 17), which recommended that an IJ be

---

[1]Since the complete background of the underlying habeas case was detailed in Judge Saporito's report, (Doc. 17), as well as in petitioner's instant brief, (Doc. 23), it shall not be fully repeated herein. *See also* Ildefonso-Candelario v. Att'y Gen., 866 F.3d 102 (3d Cir. 2017).

directed to conduct an individualized bond hearing for the petitioner and thus, grant the habeas corpus petition to this extent. Neither party objected to Judge Saporito's report.

On April 28, 2017, the court issued a memorandum, (Doc. 19), and order, (Doc. 20), concurring with Judge Saporito and finding that petitioner was mandatorily detained by ICE for an unreasonable amount of time, in violation of his constitutional due process rights. Therefore, the court granted petitioner's petition for writ of habeas corpus, (Doc. 1), and ordered that he be provided with an individualized bond hearing before an IJ within 21 days. (Doc. 20).

Additionally, petitioner indicates that after the Board of Immigration Appeals ("BIA") affirmed the IJ's finding, in September 2016, concurring that §5101 was a crime involving moral turpitude, he appealed the BIA's decision to the Third Circuit Court of Appeals, which granted a stay of his removal pending its review. He states that the Third Circuit recently held oral argument in his case on June 12, 2017, and that he is presently waiting for a decision from the appellate court.

Moreover, the government[2] states that petitioner received a bond hearing on May 11, 2017, and that he was ordered released on $2500 bond.

---

[2]The court refers to all of the respondents herein jointly as "the government."

(Doc. 21, Doc. 27 at 2-3).

On July 27, 2017, petitioner filed his instant motion for attorney's fees, expenses and costs pursuant to the EAJA, 28 U.S.C. §2412, since he was the prevailing party with respect to his underlying habeas petition and since he claims the government's position in opposing his habeas petition was not substantially justified in light of *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469 (3d Cir. 2015). (Doc. 22). He simultaneously filed his brief in support of his motion with exhibits. (Doc. 23). In short, petitioner states that the IJ found §5101 was a crime involving moral turpitude and this rendered him subject to mandatory custody under 8 U.S.C. §1226(c)(1)(A). Petitioner also states that the government failed to acknowledge this fact until he obtained an order from the IJ  to clarify that he was being detained under the mandatory custody provision at §1226(c). (*See* Doc. 9, p. 7). On August 31, 2017, the government filed its brief in opposition to the motion, (Doc. 27), arguing that the motion should be denied since its position was substantially justified with respect to all of the proceedings and that the fees requested exceed those to which petitioner is entitled under the EAJA. Petitioner filed his traverse on September 7, 2017. (Doc. 28).

## II. DISCUSSION

Petitioner seeks an award attorney's fees under the EAJA in the amount

of $7,187.50. "[T]he specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions." Patel v. Attorney General of the U.S., 426 Fed.Appx. 116, 117 (3d Cir. 2011) (citing Astrue v. Ratliff, 560 U.S. 586, 130 S.Ct. 2521, 2530 (2010)). Under the EAJA, "[a] federal court is required to award the prevailing party its fees and other expenses incurred in any civil action, unless the court concludes that the Government's position in all phases of the litigation 'was substantially justified or that special circumstances make an award unjust.'" Id. (citing 28 U.S.C. §2412(d)(1)(A)).

Moreover, "[t]he EAJA provides that a prevailing party may recover 'costs' as enumerated in 28 U.S.C. §1920." Id. at 118 (citing 28 U.S.C. §2412(a). "Additionally, such party may be awarded 'fees and other expenses.'" Id. (citing 28 U.S.C. §2412(d)(1)(A)).

This court has repeatedly found that the EAJA applies to a §2241 habeas action challenging immigration-related detention. See Wilks v. U.S. Dept. of Homeland Sec., 2009 WL 1542771 (M.D. Pa. June 2, 2009); Walker v. Lowe, 2016 WL 6082289 (M.D. Pa. Oct. 17, 2016); Soriano v. Sabol, 2017 WL 3268400 (M.D. Pa. Aug. 01, 2017).[3]

---

[3]The court finds no merit to the government's first contention that the grant of attorney's fees under the EAJA is not proper in a habeas petition action particularly in light of this court's recent decision in Soriano v. Sabol, 2017 WL 3268400 (M.D. Pa. Aug. 01, 2017), in which the court granted

Initially, the court finds that petitioner was the prevailing party in this case and thus, he qualifies for an award of attorney's fees, expenses and costs under the EAJA. Petitioner is a prevailing party since he "has been awarded some relief by a court." Buckhannon Bd. and Care Home, Inc. v. West Va. Dep't of Health and Human Resources, 532 U.S. 598, 603 (2002); Gonzales, 416 F.3d at 210 (Third Circuit held that "an alien whose petition for review of a BIA decision is granted by our Court and whose case is then remanded to the BIA is a prevailing party under the EAJA"); Soriano, 2017 WL 3268400. There is also no dispute that petitioner falls within the EAJA's financial limitation that precludes parties whose net worth exceeds $2,000,000 at the time the action was filed from recovery of fees. 28 U.S.C. §2412(d)(2)(B). (*See* Doc. 23-1, petitioner's Declaration).

Although the EAJA provides that the court can deny fees where "special circumstances make an award unjust", 28 U.S.C. §2412(d)(1)(A), the government does not contend that "special circumstances" exist in this case. Nor does the court find any "special circumstances."

The main dispute between the parties is whether the government's position was substantially justified. In Patel, 426 Fed.Appx. at 117 n. 4, the Third Circuit noted that "[a] position is substantially justified if it is 'justified to

---

attorney's fees to a §2241 habeas petitioner who prevailed in a case very similar to the present one and in which petitioner was granted a bond hearing. In fact, petitioner's counsel in the instant case is the same counsel who represented petitioner Soriano.

a degree that could satisfy a reasonable person.'" (citing Pierce v. Underwood, 487 U.S. 552, 565, 108 S.Ct. 2541 (1988)). Also, "it is the Government's burden to demonstrate its position was grounded in a reasonable basis in fact and law with a reasonable connection between the two." Id. (citing Pierce, 487 U.S. at 565). The court "do[es] not assume that the Government's position was not substantially justified simply because it lost on the merits." Id. (citing Kiareldeen v. Ashcroft, 273 F.3d 542, 554 (3d Cir. 2001)). Additionally, "[t]he Government's 'position' includes both the underlying agency action and its litigation position in the proceedings arising from that action." Id. at 117 (citing Johnson v. Gonzales, 416 F.3d 205, 210 (3d Cir. 2005)). "Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought." 28 U.S.C. §2412(d)(1)(A).

Thus, "the government must show: (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory it propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced." Morgan v. Perry, 142 F.3d 670, 684 (3d Cir. 1998). If the government does not meet its burden with respect to the three-part criteria regarding both its litigation and pre-litigation positions, then its position is not

substantially justified. Elashi v. Sabol, 2010 WL 4536774, *2 (M.D. Pa. Nov. 2, 2010) (citing Hanover Potato Products, Inc. v. Shalala, 989 F.2d 123, 128 (3d Cir.1993)). Additionally, the "EAJA is a waiver of sovereign immunity, however, so it must be construed strictly in favor of the United States." Walker v. Attorney Gen. U.S., 625 Fed.Appx. 87 (3d Cir. 2015).

Petitioner states that after he was taken into custody by ICE and removal proceedings against him were commenced, he remained detained in county prison for about 14 months under §1226(c) until he was released after the IJ held a bond hearing on May 11, 2017, as ordered by this court when it granted his habeas petition regarding his request for an individualized bond hearing. Petitioner contends that the government's position was not substantially justified with respect to both the removal proceedings and the habeas proceedings. (Doc. 23 at 7).

Specifically, in his brief, (Doc. 23 at 7), petitioner raises the following grounds to support his contention:

> 1) the government acknowledged legal error in the underlying removal order that subjected [petitioner] to mandatory detention under §1226(c) [regarding the IJ's classification of his crime under §5101 as a crime involving moral turpitude]; and
> 2) the government's litigation position before this Court included several inaccuracies—i.e. that [petitioner] had never requested a bond redetermination from the IJ; that an independent decision-maker had found him to be a danger to the community; and that he was not being detained under the "mandatory custody" provision at §1226(c).

8

Petitioner concludes, (Id. at 8), by stating:

Thus, the government detained [him] under §1226(c) pursuant to a legally flawed removal order, while simultaneously misrepresenting to this Court that he was not in mandatory custody and had been deemed a danger to society. Such government action cannot be deemed substantially justified, particularly where the end result is the fourteen-month civil detention, in a county jail, of an alien who poses no flight risk or danger to anyone.

With respect to the removal proceedings, petitioner states that "[d]uring [his] appeal to the Third Circuit, the government acknowledged that in classifying §5101 as a [crime involving moral turpitude] the IJ 'seemingly misunderstood the broad scope' of that statute, and that the BIA 'misstated the scope of its prior precedent.'" (Doc. 23 at 7) (citing Doc. 14). As petitioner concludes, "the government acknowledged legal error in the underlying removal order that subjected [him] to mandatory detention under §1226(c)." (Id. at 7-8).

Additionally, in his traverse, (Doc. 28 at 3), petitioner states that "[l]ast month, [i.e., August 3, 2017] the Third Circuit held that Petitioner's offense under §5101 is not a CIMT [crime involving moral turpitude] under the categorical approach. *See* Ildefonso-Candelario v. Att'y Gen., 866 F.3d 102 (3d Cir. 2017). In reaching this conclusion the Third Circuit found the immigration agency's CIMT finding 'unsupportable,' ..." and that "section 5101

9

encompasses non-fraudulent as well as fraudulent conduct." The Third Circuit, 866 F.3d at 105-07, explained, in part, that "section 5101 plainly sweeps in conduct which does not involve fraudulent or deceptive efforts to hinder government action" and, that "the government has been unable, either in its brief or at oral argument, to articulate any understanding of the phrase 'crime involving moral turpitude' that could plausibly encompass section 5101."

The Third Circuit "den[ied] the government's request for a voluntary remand and [held] that 18 Pa. Cons. Stat. §5101 is not categorically a crime involving moral turpitude." Id. at 107. The Third Circuit then granted petitioner's petition for review appealing the BIA's decision which upheld the IJ's determination that he was statutorily ineligible for cancellation of removal because of his prior conviction under §5101 based on the finding that it was a crime involving moral turpitude. The Third Circuit also remanded petitioner's case to the BIA for further proceedings consistent with its decision. Id. As petitioner states, (Id. at 4), the Third Circuit's decision shows that "[he] was subjected to approximately fourteen months of mandatory detention based on a [crime involving moral turpitude] finding that had 'no conceivable' supporting rationale."

Thus, with respect to petitioner's removal proceedings, the court finds that the government was not substantially justified in arguing that §5101 was

categorically a crime involving moral turpitude.

With respect to petitioner's habeas proceedings, the court finds that the government was not substantially justified in arguing that under Chavez-Alvarez v. Warden York County Prison, 783 F.3d 469, 473 (3d Cir. 2015), petitioner was not entitled to a bond hearing. *See Walker, supra*; *Soriano, supra* (This court found that "[the government's] position that mandatory detention under §1226(c) cannot be considered unreasonable until it has surpassed one year, is contrary to Chavez-Alvarez v. Warden York County Prison, 783 F.3d 469, 473 (3d Cir. 2015).").

In the underlying habeas proceeding in Soriano v. Sabol, 183 F.Supp.3d 648, 652 (M.D. Pa. 2016), this court discussed *Chavez-Alvarez* and stated:

> In *Chavez-Alvarez,* the Court applied the balancing framework and ultimately found that "beginning sometime after the six-month timeframe considered by *Demore*, and certainly by the time Chavez-Alvarez had been detained for one year, the burdens to Chavez-Alvarez's liberties outweighed any justification for using presumptions to detain him without bond to further the goals of the statute." *Chavez-Alvarez*, 783 F.3d at 478. The respondent cites to this language in support of its opposition to the instant petition. However, the respondent appears to interpret this language as stating that a detention between six (6) months and one (1) year is "acceptable" and a habeas petition commenced in such time-frame is "premature." (Doc. 6, p. 11). As is clearly evident in the previous discussion of applicable law, this is not what *Chavez-Alvarez* stands for. Instead, the Circuit Court in *Chavez-Alvarez* found that at some point in time after six (6) months of detention, the facts related to petitioner Chavez-Alvarez's detainment tipped such that due process required the

government provide Chavez-Alvarez with a bond hearing. The Court arrived at this conclusion after conducting a *fact-intensive investigation* of the circumstances, and did not arrive at this conclusion solely after counting the number of days that Chavez-Alvarez had been detained–as the respondent seems to infer.[4] Thus, the court rejects the respondent's argument that the petition is premature solely because the petitioner has not yet been detained for a full year.

Instead, the court must follow the balancing framework established in *Chavez-Alvarez* and conduct a factual inquiry to determine whether the petitioner's mandatory detention is no longer reasonable. The petitioner, here, was taken into ICE custody on July 24, 2015, and has remained in custody since that date. He has not been provided a bond hearing. As of today, the petitioner has been detained for nine (9) months. This is longer than the six-month time-frame outlined in *Demore* and also comports with Third Circuit precedent that finds any detention beyond the five month threshold to be suspect. Diop v. ICE/Homeland Sec., 656 F.3d 221, 233-34 (3d Cir. 2011). Further, nine months is within the six to twelve month time-frame contemplated in *Chavez-Alvarez.* Given the suspect nature of the length of detention, the court must carefully examine the petitioner's circumstances to determine whether this length is reasonable and comports with due process or whether it reaches the "tipping point" and requires a bond hearing.

In *Soriano, id*., this court concluded that petitioner's detention reached

---

[4]In *Chavez-Alvarez*, the Court found that one (1) year of detention was presumptively unreasonable; however, this court interprets *Chavez-Alvarez* as also concluding that detention between six (6) months and one (1) year may well be unreasonable depending upon the factual circumstances. Chavez-Alvarez v. Warden York Cty. Prison, 783 F.3d 469, 478 (3d Cir. 2015) (citing  Diop v. ICE/Homeland Sec., 656 F.3d 221, 233-34 (3d Cir. 2011); Demore v. Kim, 538 U.S. 510, 531 (2003)).

the "tipping point," and continued for an unreasonable amount of time in violation of due process. Therefore, this court found that petitioner Soriano was entitled to an individualized bond hearing.

Based on all of the above stated reasons as detailed by petitioner, the record in this case, the Third Circuit's recent finding in petitioner's appeal in his removal proceedings that the government failed to support its conclusion that §5101 is categorically a crime involving moral turpitude, as well as this court's finding that detention under §1226(c) can be considered unreasonable even when it has not yet exceeded one year since *Chavez-Alvarez* adopted a fact-specific framework for determining when detention becomes unreasonable during the six-month to one-year mark, the court finds that the government's position was not substantially justified with respect to the agency removal proceedings as well as with respect to its opposition to petitioner's request for a bond hearing in his habeas proceedings. *See* Walker v. Lowe, 2016 WL 6082289, *3 (The court found that since the alien petitioner had been detained in immigration pre-removal custody for almost two years when he filed his habeas petition, "[t]he Government's position ceased to be substantially justified, either in law or fact, sometime after [petitioner] had been incarcerated for more than six months" based on *Chavez-Alvarez* which was decided on April 9, 2015.); Soriano, 2017 WL 3268400, *5 ("With respect to the habeas proceedings, the court finds that the government was not

substantially justified in arguing that under Chavez-Alvarez v. Warden York County Prison, 783 F.3d 469, 473 (3d Cir. 2015), petitioner was not entitled to a bond hearing.").

Thus, this court finds that petitioner Ildefonso-Candelario is entitled to recover his fees and costs, and it will grant his motion for attorney's fees under the EAJA, Doc. 22.

The court now considers whether the fees sought by petitioner are reasonable. Initially, petitioner requested fees in the total amount of $7,187.50. (Doc. 23 at 9). The government argues that petitioner is not entitled to the full amount of the fees he requests because they include "a substantial amount of fees that are not recoverable under the EAJA." (Doc. 27 at 10). In particular, the government contends that "[p]etitioner is not entitled to recover fees (1) for appearing in administrative proceedings, even if those proceedings are related to the claims raised in federal court; or (2) for 'clerical' tasks, even if those tasks were performed by an attorney." (Id.). The government also contends that with respect to the remaining hours for which petitioner seeks fees, "[his] counsel should be limited to recovering at the [EAJA] statutory rate because he has failed to demonstrate his entitlement to an enhanced hourly rate." (Id. at 10-11).

The court does not see any requests for fees by petitioner related to clerical tasks in Exhibit B, Declaration of Daniel Conklin, petitioner's attorney,

attached to his motion itemizing the fees sought. (Doc. 23-2 at 4). Nor does the government point to any such fees in its brief. (Doc. 27). Thus, there will be no reduction regarding clerical tasks.

Next, the government contends that petitioner is not entitled to fees with respect to his counsel's time related to administrative proceedings, namely, the bond hearing conducted by an IJ on May 11, 2017. The government cites to Ardestani v. I.N.S., 502 U.S. 129, 112 S.Ct. 515, 518-21 (1991), in which the Supreme Court held that "[a]dministrative deportation proceedings are not adversary adjudications "under section 554" and thus do not fall within the category of proceedings for which the EAJA has waived sovereign immunity and authorized the award of attorney's fees and costs." In Ardestani, 112 S.Ct. at 520, the Supreme Court stated that the EAJA defines an "adversary adjudication" as an adjudication under 5 U.S.C. §554, which is part of the APA, and "conclude[d] that administrative immigration proceedings do not fall 'under [5 U.S.C.] section 554' [and therefore are wholly outside the scope of the EAJA ...." *See also* Hashim v. INS, 936 F.2d 711, 713 (2d Cir. 1991) (Second Circuit stated that the Supreme Court has "explicitly held that the APA does not apply to deportation proceedings"), *cert. denied*, 502 U.S. 1029, 112 S.Ct. 866 (1992)); Nadarajah v. Holder, 569 F.3d 906, 919 (9th Cir. 2009); Escobar v. U.S. I.N.S., 935 F.2d 650, 653 (4th Cir. 1991) (The Fourth Circuit "conclude[ed] that the plain meaning of the EAJA fee award provision

compels the conclusion that the EAJA does not apply to INS deportation proceedings.") (citing, in part, Clarke v. INS, 904 F.2d 172 (3d Cir.1990) (Third Circuit held that "the EAJA does not apply to deportation proceedings before the [INS].").

In this case, petitioner seeks the following fees for the time his counsel spent on May 10, 2017 preparing for the bond hearing before the IJ, which was ordered by this court, as well as the time he attended the bond hearing on May 11, 2017: "5/10/2017 [Conklin] Prepare for bond hearing 1.75 [hours] $250.00 [rate] $437.50 [total]." "5/11/2017 [Conklin] Prepare for/attend bond hearing 1.50 [hours] $250.00 [rate] $375.00 [total]." (Doc. 23-2 at 4).

In his traverse, (Doc. 28 at 8), petitioner points out that "[he] does not seek fees for his attendance at any deportation proceedings conducted under the Immigration and Nationality Act, 8 U.S.C. §1101 et seq. Rather, he seeks fees for the preparation and attendance of a hearing that was conducted pursuant to this Court's order (Doc. 20), and which should therefore be considered a part of this litigation." He cites to four case, including Sullivan v. Hudson, 490 U.S. 877, 888 (1989), and the Supreme Court's conclusion that "where administrative proceedings are intimately tied to the resolution of the judicial action and necessary to the attainment of the results Congress sought to promote by providing for fees, they should be considered part and parcel of the action for which fees may be awarded." *See also* Walker v. Lowe, 2016

WL 6082289, *5 (court awarded fees "for the individualized bond hearing that I ordered the immigration judge to conduct to streamline the instant habeas action"); Commissioner, INS v. Jean, 496 U.S. 154, 162 (1990).

As in the *Walker* case, the court finds that petitioner is entitled to fees related to the bond hearing that this court ordered since they were "intimately tied" to his underlying habeas action before this court. Indeed, the bond hearing was held as a direct result of the habeas relief which was ordered by this court in petitioner's underlying judicial action. Thus, the court will not deduct $437.50 and $375.00 (i.e., $812.50) from the fees which are awarded to petitioner since this amount is related to Conklin's time spent for the bond hearing before the IJ which was ordered by this court in the judicial action.

The court will now address the reasonableness of the remainder of petitioner's fee request under the EAJA.

In support of his fee request, petitioner has submitted the Declaration of his counsel, Daniel Conklin, (Doc. 23-2), with an itemization attached detailing the work he performed on petitioner's habeas petition, the hours expended for the work and the total amount for the work billed at the hourly rate of $250. As this court recently discussed in Soriano, 2017 WL 3268400, *7, Conklin graduated from law school in 2010 and he avers that "[s]ince graduating from law school [his] practice has focused almost exclusively on [immigration] removal defense." Conklin avers that he "exercised billing

17

judgment to ensure that the amount ultimately claimed was reasonable" and he does not seek significant amounts for research, any communications with petitioner and for procedural tasks, despite his entitlement to reimbursement for these expenditures. *See* Patel, 426 Fed.Appx. at 118. Petitioner also submitted the Declaration of Joseph C. Hohenstein, (Doc. 23-3), an immigration lawyer with over 20 years of experience "specializing in complex litigation in the federal and immigration court systems" attesting to the reasonableness of the fee amount petitioner seeks, including the work Conklin performed on petitioner's habeas case as well as the hours he spent on the case and the amount of his hourly rate, namely, $250.

The EAJA statutory rate is $125 per hour and petitioner's counsel seeks a $250 per hour rate in this case. The government argues that petitioner should be limited to the statutory rate. Hohenstein justifies Conklin's $250 rate request for this case by averring that "no attorneys to [his] knowledge would have undertaken [this complex case] at the EAJA statutory rate of $125 per hour, even adjusted for inflation." Conklin avers that his hourly rate is justified since he "possess[es] specialized expertise in the immigration and detention issues raised by this case." He also avers that "[t]he $250.00 rate [he has] requested here is the prevailing market rate for an attorney of [his] experience and expertise." (Doc. 23-2). As such, Conklin argues that he is entitled to reimbursement for attorney's fees at a rate of $250 per hour because this immigration case required specialized expertise. In fact, in two other cases in

this district, *Walker v. Lowe* and *Soriano*, Conklin, who was petitioner's counsel, was awarded an hourly rate of $250. As this court found in Soriano, 2017 WL 3268400, *7, it again finds that special factors exist in the present case justifying awarding Conklin fees at the $250/hour rate.

In Patel, 426 Fed.Appx. at 118-119, the Third Circuit stated "[a] contention that the case required specialized expertise] is inconsistent with the EAJA provision that 'attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.'" (citing 28 U.S.C. §2412(d)(2)(A)(ii)).

The EAJA, §2412(d)(2)(A)(ii), permits the court to award fees in excess of $125 per hour if it determines that an increase in the cost of living justifies a higher fee, the court makes such a finding in this case. The court concurs with the cost of living analysis recently performed by the court in Walker v. Lowe, 2016 WL 6082289, *3 (footnoted omitted), as follows:

> The late Honorable James F. McClure Jr., writing for this Court in 2010, found that with a habeas corpus matter, under the EAJA, "the statutory rate for attorney fees, adjusted for the cost of living, is $170.76 for work performed in 2009 and $174.72 for work performed in 2010." The Honorable David G. Larimer of the Western District of New York found that, in a request for fees in a social security matter under the EAJA, "$179.57 per hour for work performed in 2010, $185.04 per hour for 2011 and $193.15 per hour for 2014... adjusted for inflation, are reasonable."
> It is not clear what the cost of living increase should be per year.

However, looking to these cases, it appears to be around 3%. Accordingly, if I extrapolate the statutory rate adjusted for cost of living set by Judge Larimer for 2014 by 3%, for 2015 the rate is $198.95 and for 2016 the rate is $204.92.

This court will adopt the *Walker* Court's rational and finds that the statutory rate adjusted for cost of living for 2016 is about $205. All of the work for which attorney's fees are sought in this case was performed by Conklin in 2016 and 2017.

Additionally, based on reasoning of *Walker v. Lowe*, as well as this court's own determination in *Soriano* and in the case at bar, it finds that special factors exist in this case justifying awarding Conklin fees at the $250/hour rate. Thus, the court will not reduce the lodestar hourly rate which is sought in this case.

This court in Soriano, 2017 WL 3268400, *8, relied upon the Walker Court, 2016 WL 6082289, *4, which found that the case raised "complex jurisdictional, 'crimmigation' law, and detention issues", and that special factors, namely, Conklin's "specialized knowledge of immigration law, and the limited availability of attorneys who would have taken [Walker's] case at the statutory rate", justified his requested hourly rate of $250.00. In particular, the court in Walker, 2016 WL 6082289, *4, stated:

> The vast majority of the immigration bar in the United States does not engage in federal court litigation, and of those that do, only a small number would be willing to take on a case of this

complexity. Moreover, there are no attorneys to my knowledge who would have undertaken such litigation at the EAJA statutory rate of $125 per hour, even adjusted for inflation.

I am also familiar with the billing practices and rates of law firms in Pennsylvania. The $250 rate requested for Mr. Conklin is the prevailing market rate for attorneys of his experience and expertise. [ ]. Mr. Conklin is unique in that he as a high level of expertise even at an early stage of his career.

As in Soriano, 2017 WL 3268400, *8, this court finds in the present case the same special factors identified by the court in *Walker* justify awarding Conklin an hourly rate of $250.00. Thus, the court finds that a rate of $250 per hour is reasonable. The court also recognizes that Conklin has very good credentials in immigration cases, and, as in the *Soriano* case, he worked on Ildefonso-Candelario's habeas case *pro bono*, and provided Ildefonso-Candelario with excellent representation.

Next, the court considers the reasonableness of the number of hours worked by Conklin in this case. As discussed, the court will not reduce Conklin's total number of hours for which he seeks reimbursement of 28.75 hours regarding his work for petitioner's bond hearing before the IJ. Thus, Conklin's total number of hours for which petitioner will be awarded fees, prior to the time he filed petitioner's traverse, (Doc. 28), is 28.75 hours. Since the court is well aware of the facts of this case, it finds that 28.75 hours for the work performed by Conklin related to the habeas case, is reasonable and fully

supported by the record, including Conklin's Declaration and his detailed billing record. (Doc. 23-2 at 4). Indeed, Conklin does not seeks any of the remaining fees for the immigration proceedings and, he states that he did not bill for certain other work in order to ensure the reasonableness of his fees despite the fact that he could have billed for this work. Thus, the court will not further reduce the numbers of hours for which Conklin seeks to be reimbursed. Therefore, the court will award attorney's fees in the amount $7,187.50, i.e., $250/hour times the total number of hours of 28.75, for Conklin's work before he filed petitioner's traverse.

Finally, petitioner adds the fee in the amount of $953.80 for his attorney's work performed in preparing his traverse, (Doc. 28), in this case, i.e., 3.8 hours @ $250/hour rate. As in Soriano, 2017 WL 3268400, *6, this court will include Conklin's additional 3.8 hours which is very similar to the hours he spent for his work on the traverse in Soriano, i.e., 3.12 hours, and it finds that this amount of time is reasonable. *See* Walker v. Lowe, 2016 WL 608228, *5 (The court granted "Conklin['s] request[] [for] an additional 5.3 hours for time that he spent preparing the traverse to the Government's opposing brief, which is a 'fees on fees' request."). Thus, the revised number of total hours then becomes 32.55, i.e., 28.75 + 3.8 hours= 32.55. As such, petitioner's recalculated lodestar is $8,137.50.

## III.   CONCLUSION

In light of the foregoing, the court finds that petitioner is entitled to recover his attorney's fees, and it will grant his motion for attorney's fees under the EAJA. (Doc. 22). The court will award attorney's fees in the amount $8,137.50. An appropriate order shall follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**


**Dated: September 28, 2017**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-2120-02.wpd